IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No.   04-cv-01935-RPM

ROY M. ALEXANDER,

        Petitioner,

v.

UNITED STATES PAROLE COMMISSION,

        Respondent.
_____

MEMORANDUM OPINION AND ORDER
_____

Roy M. Alexander, an inmate of the Federal Correctional Institution, Sheridan,

Oregon, serving four consecutive life sentences imposed under the Youth Corrections

Act,[1] seeks relief from this court for the claimed failure of the United States Parole

Commission ("USPC")[2] to grant him a conditional release under 18 U.S.C. § 5017(d).

Alexander filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241 on

September 20, 2004.  This is his third petition, but it is not subject to dismissal as a

successive application under § 2244(b)(1) because Alexander is a member of a

certified class of youth offenders within the continuing jurisdiction of this court.  *Watts v.*

_____

[1]The Federal Youth Corrections Act ("YCA"), 18 U.S.C. § § 5001 to 5026, was repealed in 1984.

[2]The United States Parole Commission is an independent agency in the Department of Justice authorized to administer parole of prisoners sentenced before the Sentencing Reform Act of 1984 took effect.  The statutes creating it were repealed but it has continued in existence under legislative extensions of its authority, the latest of which granted an extension to November 1, 2008.

*Hadden*, 651 F.2d 1354 (10th Cir. 1981).

Upon review of the administrative record provided, this Court finds and concludes that the USPC has acted arbitrarily and contrary to law by failing to recognize that the release of Alexander can only be a conditional release with a wide range of restrictions available to limit his liberty in ways that will provide reasonable protection of the public and that he will never be eligible for unconditional discharge.

This case is an anomaly in several respects.  First, is the offense conduct which is both inexpiable and inexplicable.  When he was 16 years old, Alexander and a teen-age companion repeatedly shot and killed four members of a family, including a two-year-old child, in cold blood.  A jury found him guilty of premeditated murder under 18 U.S.C. § 1111 after trial in the United States District Court for the Southern District of California.  In the judgment entered on August 28, 1981, the Court found that he was 16 years of age at the date of conviction and suitable for handling under the Federal Youth Corrections Act.  Accordingly, he was committed under section 5010(c) to "the custody of the Attorney General or his authorized representative for treatment and supervision for a period of life, or until discharged by the Youth Corrections Division of the United States Parole Commission pursuant to 18 U.S.C. 5017(d)."   (Exhibit A).

That statute provides

(d) A youth offender committed under section 5010(c) of this chapter shall be released conditionally under supervision not later than two years before the expiration of the term imposed by the court.  He may be discharged unconditionally at the expiration of not less than one year from the date of his conditional release.  He shall be discharged unconditionally on or before the expiration of the maximum sentence imposed, computed uninterruptedly from the date of conviction.

2

Because four life sentences were imposed, Alexander will never be discharged unconditionally because the maximum sentence will not expire until his death.

This Court denied Alexander's first habeas petition in 1994, finding that although the Warden of FCI Sheridan had certified that Alexander had completed his program plan and recommended conditional release under supervision in July, 1992,[3] the failure of the USPC to grant release could not be determined to be irrational, arbitrary or unsupported by the evidence.

The second petition was denied by this Court and affirmed on appeal in an unpublished opinion of the Tenth Circuit Court of Appeals on May 12, 2000.  *See, Alexander v. United States Parole Commission,* 211 F.3d 1277 (Table), 2000 WL 517928 (10th Cir. (2000) (Unpublished opinion).  Again, the Court was unable to say that the USPC was irrational or unsupported by the evidence.

On June 5, 2001, Alexander reached his 15 year reconsideration date and was given a de novo initial hearing.  (De Novo Initial Hearing Summary, June 21, 2001, USPC Response, Ex. C).  The summary noted that Alexander had "been previously recommended for parole after having been certified by the warden in terms of program completion, however, the Commission decided against paroling subject due to the seriousness of the offense behavior and that subject and co-defendant murdered four persons."  The summary noted that "At today's hearing, subject readily admits that he did in fact commit the extremely serious offense."  Previously the Commission had

---

[3]18 U.S.C. § 5017(a) provides for such certification and recommendation to the Commission.

found that failure to make such an admission was a factor in denying release.

The **Risk** section reads "Subject is regarding as an extremely serious parole risk based upon the nature of the offense which involved murder of four persons."

The examiner wrote:

> The subject has fluctuated in his responses as to his role in the offense behavior and subject has displayed an indifferent attitude regarding the acceptance of responsibility and the display of remorse. . . . [T]his examiner has serious reservations whether or not the subject has been rehabilitated to the point that he does not represent a threat to the community." *Id.*

The examiner recommended that the case be continued for a 15 year reconsideration hearing.

On December 6, 2001, the Commission issued a Notice of Action continuing the case to a 15 year reconsideration hearing.  The Commission determined that even though Alexander had completed the programs, "the establishment of a parole date at this time would depreciate the seriousness of a particularly aggravated behavior in which four persons (which one of them was a 2-year-old infant) were murdered during the course of a robbery."  (USPC response, Exhibit D).

Alexander appealed and the National Appeals Board issued a Notice of Action on Appeal on March 15, 2002, reopening the case and scheduling a new 15 year reconsideration hearing on the next scheduled docket.  "It is ordered that the reconsideration hearing include a full discussion of your offense behavior and your participation in the offense.  Further, since it has been several years since your last psychological evaluation, the Commission seeks a current report so that the Commission may also evaluate the risk your release would pose to the public."  (USPC

response, Ex. F).

That psychological evaluation was conducted by B. Carl Gordon, Ph.D., Chief, Psychology Services. His report has been submitted under seal as Exhibit H. The conclusion reached by Dr. Gordon was that Alexander "does not have a diagnosable thought, mood, or personality disorder." As to additional therapy or counseling to help Alexander gain insight into his behavior, Gordon said "Whatever he is going to accomplish in these areas has largely already been accomplished." Gordon said "The critical need in Mr. Alexander's case will be helping him with his reintegrating into the community should the Commission decide to parole him." *Id.*

The next initial hearing was held on May 20, 2002. USPC Response Exhibit I, Initial Hearing Summary, dated June 5, 2002. At that hearing Alexander actually admitted to shooting two of the victims, rather than just participating in "the crime." "The subject states that the only way he has been able to cope has been to put the shooting of the mother and the child out of his mind as he cannot bring them back and he is ashamed of what he did." *Id.* The summary noted Alexander's program achievements, including his work with his representative at the hearing, Donald Hart Tucker, Drug Treatment Specialist, FCI Sheridan.

Nonetheless the examiner concluded that parole should not be granted because of (1) lack of remorse and (2) the subject has not participated in any meaningful Counseling/Therapy Programs in 5 years. The examiner recommended that the case be continued to a 15 year reconsideration hearing. The Commission agreed with the hearing examiner and Alexander was so advised of the decision by a Notice of Action

dated July 22, 2002.

Alexander filed an appeal, USPC Response, Ex. K, which was denied by the

National Appeals Board on November 15, 2002.  USPC Response, Ex. L.  The Board

considered the psychological evaluation prepared by Dr. Gordon more thoroughly than

the initial hearing examiner, but said, in part,

> ...the Commission is obliged to assume that you have some deep-seated
> psychological flaw that would permit you to engage in such inhumane
> conduct.  The Commission cannot, moreover, simply assume that 21
> years of imprisonment, and the fact that you are now 37, has made this
> aspect of your personality disappear.  Absent a convincing demonstration
> of change, the Commission must assume that you will remain a
> dangerous person for the long term, notwithstanding the fact that a prison
> psychologist could not diagnose any recognizable thought, mood or
> personality disorder during your evaluative interview.  *Id.*

Dr. Gordon wrote a letter to Alexander which the parties agree this Court can consider

a a part of the record.  Dr. Gordon wrote:

> Finally, the Parole Commission did not appear to give much credence to
> your involvement in the Alternatives to Violence Program in which you
> have participated.  As you know, this is not just a "...few weekend
> sessions."  Rather, it is an intensive workshop that starts Friday evening
> and goes through Sunday afternoon for a total of approximately 20 direct
> contact hours.  You have participated in both the basic and advanced
> programs for a total of 40 hours.  AVP focuses on providing its
> participants with the skills, emotional, cognitive, and behavioral, that are
> useful in avoiding or de-escalating situations that might move toward
> violence.  This seems to be the type of program in which the Parole
> Commission wants you to be involved.

The National Appeals Board affirmed the views of the hearing examiner.

The decision that Alexander now challenges results from a statutory interim

hearing held on June 23, 2003.  The SIH/Review Hearing Summary is Exhibit M to the

USPC's response.  The summary first notes that Alexander had a disciplinary infraction

related to unauthorized use of a computer.

Alexander was again represented by Donald Tucker, Drug Treatment Specialist. Tucker described Alexander in a very favorable light and explained that Alexander expressed remorse.  He also said that Alexander "has participated in all available programs to prepare himself for return to the community."  The summary also reads: "Mr. Tucker indicated that he has watched Mr. Alexander over the years in the manner in which he handles being denied parole without date certain.  He stated that the subject appears balance [sic] and accepts denial without any display of anxiety or frustration.  Mr. Tucker believes that subject no longer represents a threat to the community if considered for release.  He stated that he is so certain of this that he would not have any tribulations about Mr. Alexander being his next door neighbor."

The **Risk** section reads, in its entirety:

> Subject continues to be a more serious risk than his scores would indicate based on the severity of the offense.  The subject at the age of 17 shot and killed two women, one man and a 4 year old child multiple times and took their weapons.  This was subject's first conviction of record and he had no history of aggressive aberrant behavior.  Given the absence of provocation or pattern the subject's risk continued to be more serious [sic] because there are no indices to suggest that the subject is inclined to act out in an aggressive manner.  *Id.*

This language makes it clear that the examiner struggled with the notion that since there was no explanation for the crime there is no way of knowing whether Alexander will kill again.  Essentially Alexander cannot do or say anything to change that view.

In the **Evaluation** section, the examiner highlights the predicament Alexander faces:`

It is noted that the subject is serving a Federal Youth Corrections Act. This sentence was imposed for young adults who commit offenses and can benefit from Rehabilitated Programs to lessen the likelihood of their return to the community and continuing to commit similar offenses. The subject has participated in all of the available programs. If continued in custody the likelihood of participating in additional programs is limited. The subject indicated that the only other programs available to him are Vocational Trade Courses. He would have to be within 24 months of his release date before he qualifies for placement in those programs. Accordingly, he can only continue what he is doing and that is maintaining a work assignment and continue to facilitate the classes in the Anger Management Program.

Although Alexander previously admitted to committing murder, the summary indicates he provided additional information: "Subject indicated during the hearing today that at the time of the current offenses he thought that the problems that he had were so overwhelming that he no longer cared about himself or anyone else. He indicated that the day before the incident he contemplated suicide." According to the examiner, since there is no history of violence, drug use or mental illness,

The only explanation is that subject was unable to handle the everyday stresses of life as a teenager. The question at this point is whether or not he has developed the mechanisms to handle stresses of everyday life should he be returned to the community. Clearly for having been in custody for well over 20 years the stresses associated with transition are extremely high. The examiner has some concerns as to whether or not the subject has the ability to make that transition without aggressive acting out as demonstrated in the current offense. Accordingly, the examiner is of the opinion that the subject should continue to participate in the Rehabilitation Programs to minimize the likelihood of recidivism and go acting out in an aggressive manner at such time that he is considered for release. This examiner would therefore recommend no change in the 15 year Reconsideration Hearing date of May, 2017." *Id.*

The Commission concurred with this recommendation and Alexander was advised of the decision by a Notice of Action dated July 16, 2003. USPC Response, Ex. N. The National Appeals Board affirmed and wrote:

You also complain that the Commission has required that you continue to participate in programming including educational and vocational programs when such programs are not available to you at this time.  Although you may not be eligible for some programs, it is the Commission's determination that you must continue to make efforts to participate with rehabilitative programming, to the extent possible, and to refrain from committing institutional infractions.  The Commission will continue to assess your institutional adjustment along with the nature of your original offense behavior in determining your suitability for release at future hearings.

This review of the record reveals a fundamental flaw in the Commission's approach to the difficult determination of the risk to the public resulting from a release of Roy Alexander from prison.  That is the failure to recognize that he will never be free from whatever restrictions on his liberty may be appropriate to protect the public from the risk of any future violent conduct.  A reading of the views quoted shows that the question of release from confinement has been considered in an unrealistic context, suggesting that he will walk out of prison free from restraints.

Under Section 5017(a), the Commission has the authority to release a youth offender conditionally under supervision in accordance with the provisions of 18 U.S.C. § 4206.  That section established parole determination criteria and section 4209 sets requirements for conditions of parole that the parolee not commit another federal, state or local crime and authorizes imposition of other conditions of release, including residence in or participation in the program of a residential treatment center, and electronic monitoring as well as any other conditions reasonably related to the nature and circumstances of the offense and the history and characteristics of the parolee. 18 U.S.C. § 4209(a) and (c).

All of the statutory provisions for parole have been repealed but are still

applicable to prisoners sentenced before the Sentencing Reform Act became effective.

YCA section 5020 provides for the return to custody of released youth offenders, as follows:

> If, at any time before the unconditional discharge of a committed youth offender, the Commission is of the opinion that such youth offender will be benefited by further treatment in an institutional or other facility the Commission may direct his return to custody or if necessary may issue a warrant for the apprehension and return to custody of such youthful offender....

As previously noted, Alexander will never be eligible for an unconditional discharge because he is serving consecutive life sentences.

Under USPC regulations, a grant of parole of an adult offender is conditioned upon development and approval of a release plan.  28 C.F.R. § 2.33.  That has never been considered for Alexander.

The failure of the Commission to consider the setting of a presumptive conditional release date and the development of a release plan tailored to reasonable requirements for conditions applicable to Roy Alexander makes the continuing refusal to grant conditional release an arbitrary refusal to exercise the discretion the Commission has under the YCA and denies the petitioner the benefits of an indeterminate period of confinement that is at the core of the rehabilitative purpose of the Act.

Under *Watts v. Hadden, supra,* this Court has the duty and authority to compel the Commission to comply with the YCA by mandating the action necessary to implement its provisions.  Accordingly, it is

ORDERED, that within 90 days from the date of this order, the respondent, United States Parole Commission, shall proceed with the development of an appropriate pre-release program to be followed by the Bureau of Prisons to assist Roy M. Alexander in making the transition from his institutional confinement to prepare him for a conditional release

and shall establish such conditions for his release as are appropriate for him.

DATED: June 12th, 2006.

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior DistrictJudge

12