IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No.  04-cv-01935-RPM

ROY M. ALEXANDER,

        Petitioner,

v.

UNITED STATES PAROLE COMMISSION,

        Respondent.
_____

ORDER GRANTING HABEAS CORPUS RELIEF
_____

        In 1950, Congress enacted the Federal Youth Corrections Act ("YCA"), codified at 18

U.S.C. § § 5001 to 5026, for alternative sentencing of those under age 22 to promote

rehabilitation by providing corrective and preventive guidance and training in institutions

designated by the Director of the Bureau of Prisons, segregated from other offenders.  It also

provided that parole eligibility must be determined based on the YCA offender's response to

treatment.  The Director was required to make periodic examinations and reports to the Board of

Parole as to the progress of each offender and may recommend conditional release upon

completion of the prescribed programs.

        In 1976, Congress passed the Parole Commission and Reorganization Act establishing

the Parole Commission, replacing the Board of Parole and establishing statutory criteria for

making parole determinations in 18 U.S.C. § 4206(a).  That statute also amended § 5017(a) of

the YCA by incorporating § 4206(a).  The requirement that the Director report on treatment and

recommend to the Parole Commission that the youth offender be released conditionally under

supervision remained in the statute.  The Parole Commission, as authorized by § 4206,

promulgated guidelines for use in determining parole eligibility of all offenders.  Those

guidelines emphasized offense severity as a dominant factor in a scoring system which sought to make parole decisions more objective and avoid disparity.

In a class action before this court in 1979, YCA offenders proved that the Bureau of Prisons and the Parole Commission were ignoring the requirements of the YCA by failing to provide treatment in age segregated facilities and by applying the same parole guidelines used for adult offenders in determining conditional release.  At trial, the Director candidly said that the BOP had determined that the YCA had outlived its usefulness and the rehabilitative approach was no longer effective.  The Parole Commission contended that the YCA provisions applicable to it had been implicitly repealed by the 1976 Reorganization Act giving it authority to use the guidelines promulgated under § 4206 for YCA offenders.

This Court rejected those views and directed both defendants to adopt policies more consistent with the YCA.  *Watts v. Hadden,* 469 F. Supp. 223 (D.Colo. 1979).  That decision was affirmed by the Tenth Circuit Court of Appeals in *Watts v. Hadden,* 661 F.2d 1354 (10th Cir. 1981).  That decision has been instructive and followed in subsequent rulings on individual petitions for habeas corpus that have come before this court by class members.  See, *Benedict v. Rogers*, 748 F.2d. 543 (10th Cir. 1984).

In 1984, Congress completely changed the sentencing regime of the Federal courts by enacting the Sentencing Reform Act, creating the United States Sentencing Commission and authorizing it to establish sentencing practices and policies, including guidelines and policy statements to be used in the district courts.  28 U.S.C. § 991, *et seq.*  That statute also prescribed the factors to be considered by the court in imposing a sentence, emphasizing the need to provide just punishment for the offense and afford adequate deterrence to criminal conduct.  18 U.S.C. § 3553.  Parole was abolished, replaced by supervised release under the direction and authority of the sentencing judge.

Roy M. Alexander is trapped because of these changes in the law and the policies upon which they are based.  As a result of a trial he was convicted of four counts of first degree

2

murder and murder during the commission of a robbery in the Southern District of California in 1981. The jury sentenced him to four consecutive life terms. Because Mr. Alexander was only 16 years old at the time of the offense, the sentencing judge ordered that the sentence be served under the YCA, finding that Alexander could benefit from rehabilitative and training programs which might eventually assist him in reentering society. The judge commented that he thought that Mr. Alexander should spend at minimum 15 years and more likely 20 to 25 years in prison. The sentencing judge knew and understood the purpose of the YCA and his decision within the context of the law as it then existed. The petitioner has the right to rely on that law even though the criminal justice system in the Federal courts has changed, making the rehabilitative model obsolete.

Roy Alexander has now been in prison for 30 years. He has never been housed in an age segregated facility designed for YCA offender treatment. He has completed all of the treatment programs made available to him. The BOP recommendations for conditional release under supervision have been repeatedly rejected.

Mr. Alexander has repeatedly presented his predicament to this court by petitions for habeas corpus under 28 U.S.C. § 2241. These were appropriately filed here even though he is in the custody of the BOP at FCI, Sheridan, Oregon, because he is a member of the class certified in *Watts v. Hadden* and these are not considered successive petitions under § 2244 for the same reason.

After another denial of conditional release contrary to the Warden's recommendations, this Court entered an order on June 12, 2006, directing the Parole Commission to develop an appropriate pre-release plan to be followed by the BOP and to establish such release conditions as may be appropriate for supervision by a parole officer. That order was based on a determination that the Parole Commission had acted arbitrarily in failing to consider conditions of release that may be imposed in evaluating the risk to the public and in failing to give sufficient weight to the Warden's recommendation based on Mr. Alexander's response to treatment.

3

That ruling was affirmed by the Tenth Circuit Court of Appeals in *Alexander v. U.S. Parole Commission,* 514 F.3d 1083 (10th Cir. 2008), but the remedial direction requiring the development of a pre-release plan and to establish conditions of supervised release was reversed because the appellate court considered that order to be the equivalent of a direction to establish a presumptive release date.  The court said that the Commission should be given another chance to evaluate Mr. Alexander's status and that he will have leave to file a subsequent habeas corpus petition if parole is denied.  *Id at 1092*.

Roy Alexander filed a Renewed Petition for Writ of Habeas Corpus on April 20, 2010. He attached a Notice of Action, dated February 22, 2010, which reads, in part: "As a result of the hearing conducted on October 15, 2009, the following action was ordered: Continue to a hearing October 2010.  This hearing shall be a full consideration of this case."  The Notice did not indicate whether Mr. Alexander was granted or denied release, and did not state the reasons for the Commission's "actions".

In its response, the Commission said that following a hearing in October, 2009, the hearing officer recommended denial of parole.  The Commission further said: "In a Notice of Action, dated February 22, 2010, the Commission adopted the hearing examiner's recommendation, however, the Commission inadvertently omitted from the decision the reasons for its determination.  After petitioner filed this current litigation, the Commission's Office of General Counsel reviewed the case and recommended that the Commission clarify the record by issuing an amended Notice of Action stating the reasons for denial of parole.  By Notice of Action, dated June 21, 2010, the Commission amended its February 22, 2010 decision to include the reasons for denying petitioner parole and continuing his case for re-hearing in October 2010." (Doc.45).

In his reply, (Doc. 46), Mr. Alexander addressed the merits of the June 21, 2010 Notice of Action.  He argued the Notice of Action mischaracterizes the reasons for denying release: "As a justification for denying release, it states that, based upon the pre-release procedures adopted

4

during the July and November 2008 hearings, the Commission had found that Alexander must participate in individual psychotherapy sessions.  The hearing represented by the October 31, 2008, Notice of Action was, however, the reconsideration hearing held as a result of this Court's order to devise a pre-release plan.  The Commission's directive that Alexander participate in psychotherapy was part of the pre-release plan.  It, however, ignored the testimony of Karen Angus concerning his extensive prior participation in psychotherapy and group therapy, that he had not been found to be mentally ill and that there *weren't programs available to him.*"  (Emphasis added).

Alexander also challenged the June 21, 2010, Notice of Action on the ground that it focused solely on Alexander's offense behavior as compared to that of his co-defendant (Amaro).  The Notice was based on the report of Hearing Examiner Howard of the hearing held on October 15, 2009.

As stated by petitioner's counsel: "Alexander's denial of release on October 15, 2009, as articulated by Hearing Examiner Howard, is based on the purported relative culpability findings of the Commission more than ten years ago, and the Commission's belief that Alexander should serve more time than his co-defendant.  It's exclusive focus, therefore, is on the severity of the offense."

The renewed petition was heard on October 1, 2010.  After criticizing the Commissioner's position, the court took the matter under advisement to issue a written ruling.  The Commission then set an interim hearing for October 15, 2010.  Mr. Alexander was represented by counsel at that hearing.  Paul Howard was again the examiner.  He identified the purpose as a "12 -month reconsideration hearing".

The documents relevant to that hearing and a transcript of it have been filed and The Hearing Summary prepared by the examiner, Paul Howard is a fair report of the hearing.  (Doc. 63-2).

A Notice of Action, dated November 18, 2010 was issued.  A copy is attached.

Following an administrative appeal, the Commission issued a Notice of Action on Appeal, dated February 28, 2011.  A copy is attached.  This is the final action that is now under review.  Oral argument was heard on March 25, 2011.

The conclusions stated in the Notice of Action on Appeal are contrary to the record; they are based on unwarranted assumptions as to the relative credibility of Roy Alexander and the co-defendant's trial testimony and give credence to a prosecutor's view of Mr. Alexander in a report made shortly after sentencing.  The Commission completely disregarded the opinions given at the hearing by those who directly interacted with the petitioner during his treatment.

The Examiner's summary of the testimony of Paul Perona, case manager and counselor for the petitioner, included the belief that he does not pose a threat of committing new criminal conduct and that:

> He believes the subject has accepted full responsibility for the crime and has gracefully dealt with the previous denials of parole.  Based on his current age (46), it will be harder for him to maximize his readjustment to society if he is not released at this time.  He is still recommending that Mr. Alexander be granted a parole date.

The examiner summarized the hearing testimony of the BOP staff psychologist, Gary Paape, concerning individual counseling sessions with Mr. Alexander since October, 2009 and Mr. Alexander's role as a primary inmate facilitator to Alternatives to Violence Program and as a teacher of a course on Moral Values.  The Examiner summarized the psychologist's opinion as follows:

> He believes the subject has good insight and motives behind the original offense conduct , and very committed to a positive social values.  He noted the subject's teenage years when he was very disillusioned with things, and how he has been impressed with his current commitment to values, and the change process in other people's lives.  They have talked about the impact of the crime on his psyche, emotions, and life decisions.  In groups, inmates from other ethnicities talk about how they have been able to express themselves to the subject.  In his opinion, the subject has taken solid steps towards release; he has good family support, and has a vision for the future.  He has no diagnosed mental health issues and he is very open to continue counseling if he's granted parole.  The release plan that was approved in 2008 is still viable.

A retired BOP employee voluntarily came to the hearing to support Mr. Alexander.  Her testimony was summarized in the Examiner's report:

> Karen Angus stated that she thought the subject would have been paroled after the October, 2009 hearing.  She worked for the BOP for 27 years and knew the subject the majority of the time.  She has personally certified his YCA status twice as complete and views him as a model inmate.  Her understanding of the YCA status is that the person is deemed to be redeemable and should have been released after he was certified.  She stands by her previous recommendations for parole so he can have the opportunity to be a positive member of society.  She previously stated that she would not have any problems with him as a neighbor and stands by that comment.  During her career in the BOP there have been very few cases in which she has spoken on behalf of inmates.  The subject has been one of those inmates that she has seen grown and mature and believes he will be successful.

Contrary to these views, Examiner Howard concluded that parole should be denied and "subject should continue in one-on-one psychotherapy to address his failure to fully admit the truth about his level of culpability."

It is not necessary to keep the petitioner in prison to provide psychotherapy.  That can be done as a condition of release.  The fundamental flaw in the Parole Commission's consideration of Roy Alexander's case is the continued failure to recognize that the criteria in § 4206 are only a part of the decision to be made under the YCA.  A conditional release under § 5017 is not parole.  The supervision of a youth offender by probation officers under § 5019 is different from that of adult offenders.  Most importantly, apprehension and return to custody is authorized under § 5026 for further treatment and does not depend upon new criminal conduct or a violation of a condition of release.  That section is still applicable and reads as follows:

> § 5020.  Apprehension of released offenders.
>   If, at anytime before the unconditional discharge of a committed youth offender, the Division is of the opinion that such youth offender will be benefitted by further treatment in an institution or other facility any member of the Division may direct his return to custody or if necessary may issue a warrant for the apprehension and return to custody of such youth offender and cause such a warrant to be executed by a United States marshal, or any officer of a Federal penal or correctional institution.  Upon return to custody, such youth offender shall be given an opportunity to appear before the Division or a member thereof.  The Division may then or at its discretion revoke the order of conditional

release.  (Added Sept. 30, 1950, ch. 1115, § 2, 64 Stat. 1089)[1]

The Commission's concern with the risk to public safety in Mr. Alexander's case is not rationally supported by the record.  It fails to recognize the role of the supervising probation officer and the authority of the Commission to impose conditions to protect the public.

In its recent ruling that the imposition of a sentence of life without parole for a teenager in a non homicide case violated the Eighth Amendment, the Supreme Court discussed extensively the importance of recognizing the differences between juveniles and adults in the moral culpability of their criminal conduct.  *Graham v. Florida*, 130 S.Ct. 2011 (2010).  Those differences are the same as those that motivated enactment of the YCA.

There can be no dispute that the murders committed by Roy Alexander were heinous and deserving of condemnation.  The life sentences do that.  The continuing imprisonment of this middle age man for crimes that defy rational explanation when he was a teenager does not serve the penological  purposes of retribution and deterrence to a degree that overrides the purpose of the YCA.

The judge sentencing Roy Alexander was aware of the purpose of the YCA when he found that the teenager appearing before him may be expected to be able to return to society after a lengthy period of confinement for treatment.

Those who have been responsible for providing that treatment have unequivocally said that this 46 year old man should be given the opportunity to be released under close supervision.  For the Parole Commission to continue to refuse to do so is an arbitrary and capricious abuse of authority and is contrary to law.

Although determining a date for conditional release and prescribing the appropriate conditions for the protection of the public are not within the role of this court, the responsibility for protecting the limited liberty interest of a person in custody by issuing a writ of habeas

---

[1]The reference to the Division is to the division in the Board of Parole whose function is now that of the Parole Commission.

corpus to dispose of the matter as law and justice requires is within the jurisdiction provided by 28 U.S.C. § 2243.  That responsibility requires more that just another admonition to obey the law.  It is, therefore

ORDERED, that within ninety days the Parole Commission shall set a presumptive date for conditional release of Roy Alexander and set the conditions for supervision.

DATED: May 16th, 2011

BY THE COURT:

s/Richard P. Matsch

_____

Richard P. Matsch, Senior District Judge